### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### NORTHERN DIVISION

**SHONDA N. GROSS**                                                    **PLAINTIFF**

**V.**                          **CASE NO. 1:14CV4-BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                   **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Plaintiff Shonda N. Gross has appealed the final decision of the Commissioner of

the Social Security Administration to deny her claim for disability insurance benefits and

supplemental security income.  Both parties have submitted appeal briefs and the case is

ready for decision.[1]

The Court's function on review is to determine whether the Commissioner's

decision is supported by substantial evidence on the record as a whole and free of legal

error.  *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185,

187 (8th Cir. 1997); see also 42 U.S.C. §§ 405(g).  Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257

(8th Cir. 1996).  In assessing the substantiality of the evidence, the Court has considered

---

[1]The parties have consented to the jurisdiction of the Magistrate Judge.  (Docket
#4)

evidence that detracts from the Commissioner's decision as well as evidence that supports it.

Ms. Gross alleged that she became limited in her ability to work by bipolar disorder, anxiety, and manic depression.  (SSA record at p. 70)  After conducting an administrative hearing, the Administrative Law Judge[2] (ALJ) concluded that Ms. Gross had not been under a disability within the meaning of the Social Security Act at any time through October 26, 2012, the date of his decision.  (*Id*. at 27)  On November 29, 2013, the Appeals Council received and considered additional evidence, then denied the request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (*Id*. at 4-7)  Ms. Gross then filed her complaint initiating this appeal. (Docket #2)

Ms. Gross was 34 years old at the time of the hearing.  (SSA record at 775)  She is a high school graduate in regular classes with two years of college.  (*Id*.)  She has past relevant work as a licensed practical nurse.  (*Id*. at 26)

The ALJ found Ms. Gross had not engaged in substantial gainful activity since October 12, 2010,[3] her alleged onset date.  (*Id*. at 14)  He found that Ms. Gross had "severe" impairments: diabetes mellitus with neuropathy, headaches, back pain, pain disorder, obesity and depression.  (*Id*.)  He found she did not have an impairment or

---

[2]The Honorable Don Curdie.

[3]Many of the medical documents in the 803 page record are from the time period before Ms. Gross's alleged onset date.

combination of impairments that met or equaled a Listing.  (*Id*. at 14-15)  He judged that

Ms. Gross's allegations regarding the intensity, persistence, and limiting effects of her

symptoms were not totally credible.  (*Id*. at 20)

Based on these findings, the ALJ concluded that Ms. Gross retained the residual

functional capacity for light work, but could only occasionally climb, balance, stoop,

bend, crouch, kneel and crawl.  Additionally, she would have the ability to perform only

in a work setting where interpersonal contact was incidental to the work performed, the

complexity of the tasks would be learned and performed by rote with few variables, with

little judgment and supervision required, and where instructions were simple, direct, and

concrete.  (*Id*. at 15)

Based on testimony from a vocational expert (VE), the ALJ concluded that Ms.

Gross could not perform her past relevant work but could perform other jobs that existed

in significant numbers in the national economy.[4]  (*Id*. at 26-27)  Thus, the ALJ concluded

that Ms. Gross was not disabled. (*Id*. at 27)

Ms. Gross argues that the Appeals Council failed to properly consider a mental

residual functional capacity questionnaire ("Questionnaire") completed by Olympia

Rosario, M.D., of Families, Inc. at her lawyer's request four days after the ALJ found her

---

[4]The VE identified two jobs that a person with Ms. Gross's limitations could perform – parts assembler and cafeteria attendant.  (*Id*. at 27)

not disabled.  (#11 at p. 12)  She maintains that the Questionnaire indicates difficulty in

finding the "correct combination and dosage of medications."  (*Id*.)

> When new and material evidence is submitted to the Appeals Council,
>
> [t]he Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record. 20 C.F.R. § 404.970(b). The newly submitted evidence is to become part of what we will loosely describe here as the "administrative record," even though the evidence was not originally included in the ALJ's record. *Browning v. Sullivan*, 958 F.2d 817, 823 n. 4 (8th Cir. 1992). If the Appeals Council does not consider the new evidence, a reviewing court may remand the case to the Appeals Council if the evidence is new and material. See *Williams v. Sullivan*, 905 F.2d 214, 217 (8th Cir. 1990). If, as here, the Appeals Council considers the new evidence but declines to review the case, we review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision. *Browning*, 958 F.2d at 823.

*Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992)(footnote omitted).

It is clear that the Appeals Council considered the evidence Ms. Gross submitted.[5]

(SSA record at 4, 7)  And there is substantial evidence in the record as a whole, including

the Questionnaire, to support the ALJ's determination.

The Questionnaire completed by Dr. Rosario is a check-the-box type of form in

which she found Ms. Gross to be "unable to meet competitive standards" to perform work

---

[5]Ms. Gross submitted medical Records from Families, Inc., for June 4, 2011 through September 6, 2012, and a Mental Residual Functional Capacity Questionnaire from Olimpia Rosario, M.D. dated October 30, 2012.  (SSA record at 7)

in a number of areas.  (*Id*. at 766, 768)  Dr. Rosario did not offer explanations for her

conclusion, however, and there is no indication she performed any testing on Ms. Gross.

(*Id*. at 768, 769, 771)  According to the record, before completing the Questionnaire, Dr.

Rosario saw Ms. Gross on three occasions – December 20, 2011, March 20, 2012, and

June 26, 2012 – for medication checks.  Each appointment lasted fifteen minutes.[6]  Dr.

Rosario's minimal contact with Ms. Gross, along with the check-the-box format,

incompleteness, and generality of her assessment limits the Questionnaire's evidentiary

value.  *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (citing *Piepgras v.

Chater*, 76 F.3d 233, 236 (8th Cir. 1996)).

 Ms. Gross complains that the ALJ erred in finding she was capable of performing

a limited range of light, unskilled work.  More specifically, she claims that, in making his

RFC assessment, the ALJ underestimated the severity of her mental impairments and

failed to account for her low Global Assessment of Functioning ("GAF") scores and

diabetic neuropathy.

 The ALJ must determine a claimant's residual functional capacity based on all

relevant evidence, including medical records, observations of treating physicians and

others, and the claimant's own descriptions of her limitations.  *Tellez v. Barnhart*, 403

F.3d 953, 957 (8th Cir. 2005); *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003).

---

[6]Dr. Rosario also signed-off on Ms. Gross's treatment plans.  (*Id*. at 621, 643, 652, 704)

The ALJ narratively discussed the medical evidence, Ms. Gross's subjective complaints, and other evidence.  (*Id*. at 15-26)  He considered Ms. Gross's mental functioning in activities of daily living; social functioning; concentration persistence, and pace; and episodes of decompensation.  (*Id*. at 24)  He discussed the treatment records from Families, Inc., the 2010 and 2011 consultative examinations performed by Nancy A. Bunting, Ph.D., the opinion of State agency consultant Brad F. Williams, Ph.D., and the neuropsychological evaluation of Vann A. Smith, Ph.D.

The ALJ considered the fact that Ms. Gross cared for her own personal needs as well as those of her disabled husband, her partially paralyzed mother, her three children, and family pets; performed household chores such as cleaning, laundry, and cooking; cared for her two-year-old nephew five days per week; and read, watched television, used a computer, and played World of Warcraft up to eight hours per day.  (*Id*. at 24, 97-101, 116, 347)

The ALJ recognized that Ms. Gross's impairments created limitations and he incorporated those limitations into his residual functional capacity finding.  (*Id*. at 15-26)

As noted, Ms. Gross complains that the ALJ did not properly consider her low GAF scores.  *The Diagnostic and Statistical Manual of Mental Disorders* (4th ed.) ("DSM–IV"), published by the American Psychiatric Association, states that a GAF score of 41 to 50 generally indicates serious impairment in social, occupational, or school functioning.  (DSM–IV 32) The DSM–IV, however, is a classification of mental disorders

6

that was developed for use in clinical, educational, and research settings.  Specific

diagnostic criteria included in the DSM–IV are meant to serve as guidelines to augment

clinical judgment and are not meant to be used in a cookbook fashion.  A GAF score does

not have a direct correlation to the severity requirements in mental disorders listings. 65

Fed.Reg. 50746, 50764–65 (2000).

Here, the ALJ acknowledged Ms. Gross's GAF scores but explained why they

were not controlling.  (*Id*. 16-17)   He considered the scores, along with other evidence in

the record.  He did not err by not giving the scores greater weight than he did.  See *Jones*

*v. Astrue*, 619 F.3d 963, 972-74 (8th Cir. 2010) (ALJ may afford greater weight to

medical evidence and testimony than to GAF scores when the evidence requires it).

Finally, Ms. Gross complains that the ALJ's RFC assessment is not consistent with

her limitations caused by diabetic neuropathy.  Ms. Gross has not pointed to any evidence

in the record to suggest her diabetic neuropathy limited her from performing light work

further limited to only occasional climbing, balancing, stooping, bending, crouching,

kneeling, and crawling.  Ms. Gross did not describe physical limitations that would

prevent her from performing light work; nor did she report experiencing pain.  (*Id*. at 102,

105)  Further , Ms. Gross has not been prescribed extensive pain medication.  (*Id*. at 22)

Even after considering Dr. Rosario's report along with the other evidence in the

record, a fair reading of the ALJ's opinion reveals no error in his determination of Ms.

Gross's residual functional capacity.

Finally, Ms. Gross complains that the ALJ erred by not finding her personality disorder and anxiety disorder were severe impairments.  Ms. Gross's complaint provides no basis for relief.

The claimant bears the burden at step two of demonstrating the existence of an impairment that significantly limits her ability to do basic work activity.  20 C.F.R. §§ 404.1520(c), 416.920(c); *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 007)  Ms. Gross has not pointed to any evidence in the record to support her contention that her personality disorder and anxiety disorder rose to the level of a severe impairment.

Additionally, because the ALJ found other severe impairments, he proceeded to step three where he considered all of the medical evidence and all of Ms. Gross's impairments.  *Bozven v. Yuckert*, 482 U.S. 137, 156, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (O'Connor, J., concurring).  The ALJ discussed Ms. Gross's mental health counseling records as well as the assessments of Dr. Bunting and Dr. Smith.  The ALJ discussed the treating source records from Families, Inc., including the findings of anxiety and personality disorder.  The ALJ's explanation shows that he considered all of the medical evidence.  Accordingly, even if Ms. Gross's personality disorder and anxiety disorder were severe, no harm came from the ALJ's finding they were non-severe at step two.  See *Swartz v. Barnhart*, 188 F. App'x 361, 368 (6th Cir. 2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged

impairments, any error in failing to identify particular impairment as "severe" at step two is harmless).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which would support a different outcome. The test is whether there is substantial evidence, on the record as a whole, to support the ALJ's decision. *Van Vickle v. Astrue,* 539 F.3d 825, 828 (8th Cir. 2008).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401. The Commissioner's decision is not based on legal error.

The final determination of the Commissioner is AFFIRMED, and Ms. Gross's complaint is hereby dismissed with prejudice, this 11th day of December, 2014.

_____
UNITED STATES MAGISTRATE JUDGE